Upon review of the competent evidence of record with reference to the errors assigned, and finding no good grounds to receive further evidence or to rehear the parties or their representatives, the Full Commission affirms and adopts with some modifications the Opinion and Award of the Deputy Commissioner.
 ***********
The Full Commission finds as fact and concludes as matters of law the following which the parties stipulated to at the hearing before the Deputy Commissioner:
 STIPULATIONS
1. Defendant-employer had three or more employees as of 1 February 2000.
2. Plaintiff performed work for defendant-employer approximately from 7 December 1998 until 4 February 1999.
3. The carrier on risk the was Continental Casualty Company.
4. Plaintiff's average weekly wage was $586.87.
5. A pre-trial agreement dated 14 June 1999 shall be part of the record, as will the following stipulated exhibits:
Stip. Exh. 1: Industrial Commission proceedings leading to hearing.
Stip. Exh. 2: Plaintiff's medical records prior to 1 February 1999.
 Stip. Exh. 3: Plaintiff's medical records for the period 1 February 1999, forward.
 Stip. Exh. 4: Physical therapy records from Moses Cone Rehab Center.
Stip. Exh. 5: Time card for the week ending 5 February 1999.
 ***********
Based upon all the competent, credible evidence of record, the Full Commission enters the following:
 FINDINGS OF FACT
1. Plaintiff was born on 19 October 1967. He was 31 years old at the time of the hearing before the Deputy Commissioner.
2. Plaintiff was employed by defendant-employer from 7 December 1998 until 5 February 1999, as a bulk account management trainee. His duties included setting up displays and making product available at four supermarkets. Maintaining the displays included regularly lifting and carrying cases of soda which weighed between 36 and 39 pounds. He usually worked about 50 hours per week.
3. On 22 April 1997, plaintiff suffered a back injury while in the employment of Rome Strip Steel Co. in Rome, NY. He suffered immediate, severe low back pain at the time of that accident. He also had radiation of pain down his right leg to his right foot. He was out of work for about five weeks following the accident. He had an MRI of his low back on 9 May 1997 which revealed herniated discs at L4-5 and L5-S1. A neurosurgeon, Dr. William A. Stewart, saw plaintiff on 22 May 1997 and advised plaintiff to avoid frequent bending and twisting and to lift a maximum of 30 lbs. at a time. While working at Rome Strip Steel Co., plaintiff also exacerbated his back condition on 11 August 1997 due to lifting, and he suffered bilateral inguinal hernias as a result of heavy lifting on or about 18 December 1997 which required surgical repair performed on 25 February 1998.
4. Plaintiff received chiropractic treatment from Karen K. LaBella of LaBella Chiropractic in Rome, N Y on a regular basis between 22 April 1997 and 20 October 1998. Sometimes plaintiff received treatment from Dr. LaBella twice a week, and sometimes he saw her about every other week. Plaintiff received treatment from Dr. LaBella on four occasions during September 1998 and he saw her about once a week during the first three weeks of October 1998. He stopped seeing Dr. LaBella because he moved to North Carolina. On 23 May 1997, Dr. LaBella indicated that plaintiff should adhere to a 30 pound weight lifting limit.
5. Prior to beginning his employment with defendant-employer on 7 December 1998, plaintiff was interviewed by Alan Wolfe and he also completed a post-job-offer medical history statement. In his interview with Mr. Wolfe, plaintiff told Mr. Wolfe that he would have no problem doing the lifting that was required in the job with defendant-employer, and that there was no reason he would be unable to perform the job. The information that plaintiff provided in his post-job-offer medical history statement was inconsistent. Plaintiff indicated in one instance that he had never had any problems with his back, but in another instance he indicated that he had suffered a back injury in April 1997, although plaintiff failed to list the names of his treating physicians in connection with that accident. Defendant-employer required plaintiff to go to U.S. HealthWorks for a physical examination prior to the date of hire in order to get certification to drive a truck, and plaintiff failed to tell the examining physician about his prior back injury. The physician at U.S. HealthWorks indicated that plaintiff had no history of spinal injuries.
6. Plaintiff's job with defendant-employer required frequent lifting of 2-liter crates weighing 36 pounds each and 3-liter crates weighing 39 pounds each. Plaintiff was suffering intermittent low back pain during the last ten days of January 1999. During the last week of January 1999, plaintiff told a supervisor that he did not know how long he would be able to handle the job, and that he was concerned that he would wear out his body.
7. Before he started to work on 1 February 1999, plaintiff tried to stretch his back because he had been having low back stiffness. After plaintiff began working his back pain worsened. Although plaintiff testified that he felt a sharp pain while lifting a crate of drinks, in light of plaintiff's false representations during the hiring process and the fact that plaintiff had back pain for a week or two prior to 1 February 1999, the Full Commission finds that plaintiff did not suffer a specific traumatic incident of the work assigned, nor did anything unusual occur on 1 February 1999. Plaintiff's pre-existing back pain may have worsened; however, the pain plaintiff felt on 1 February 1999 was the result of a gradual deterioration in his back condition. He did not suffer an injury by accident or a specific traumatic incident arising out of and in the course of his employment with defendant-employer.
8. U.S. HealthWorks recommended that plaintiff do light duty work between 1 February and 15 February 1999. Defendant-employer had light duty work available for plaintiff. Plaintiff worked light duty from 2 February until 5 February 1999, but plaintiff declined defendant-employer's offer of light duty work thereafter.
9. U.S. HealthWorks recommended that plaintiff not work beginning on 15 February 1999. It referred plaintiff to an orthopedist. Plaintiff began seeing Dr. Frank J. Rowan, an orthopedic surgeon, on 5 March 1999. Dr. Rowan indicated that plaintiff was restricted to either sedentary or light duty work between 5 March 1999 and 5 May 1999. Plaintiff told Dr. Rowan that he was working as a receptionist as of 10 April 1999. Plaintiff began working for U.S. Airways on 5 May 1999 in customer service, and he worked in that job on a full-time basis between that date and the hearing before the Deputy Commissioner.
10. Plaintiff had a flare up of back pain that began on or about 20 January 1999 and continued until approximately 5 May 1999. The pain plaintiff complained of as a result of the flare up of his back pain was consistent with the type of symptoms he experienced from his prior back injury. Any incapacity to work plaintiff may have experienced was not due to his employment with defendant-employer. Plaintiff reached maximum medical improvement by 6 May 1999. As of 6 May 1999, plaintiff had fully recovered from his 1999 flare up. Plaintiff retains a 5% permanent partial disability to his back, but the rating is with respect to his 1997 work related injury in New York, not to his flare up of pain during 1999. To the extent that plaintiff has any work restrictions, those restrictions relate to his accident in New York in 1997, and not to his flare up of pain during 1999.
11. Defendant-employer would not have hired plaintiff for the job as a bulk account management trainee if plaintiff had provided accurate information concerning his prior back problems during his interview with Alan Wolfe on 18 November 1998 and in his post-job offer medical statement dated 7 December 1998.
12. Plaintiff knowingly and willfully made false representations as to his physical condition. Defendant-employer relied upon the false representations and such reliance was a substantial factor in hiring plaintiff for the job that plaintiff had at the time of his alleged accident. There was a causal connection between the false representations and the injury in question.
 ***********
Based upon the foregoing stipulations and findings of fact, the Full Commission enters the following:
 CONCLUSIONS OF LAW
1. Plaintiff did not suffer an injury by accident or specific traumatic incident arising out of or in the course of his employment with defendant-employer. N.C. Gen. Stat. § 97-2(6).
2. Plaintiff's claim is therefore not compensable. N.C. Gen. Stat. § 97-2 et seq.
 ***********
Based upon the foregoing findings of fact and conclusions of law, the Full Commission enters the following:
 ORDER
1. Plaintiff's claim must under the law be and it is hereby DENIED.
2. Defendants shall pay $350.00 to Dr. Rowan for a fee for his deposition.
3. Each side shall pay its own costs.
This the ___ day of July, 2001.
 S/___________________ BERNADINE S. BALLANCE COMMISSIONER
CONCURRING:
 S/_______________ DIANNE C. SELLERS COMMISSIONER
 S/______________ RENE C. RIGGSBEE COMMISSIONER